IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CITY OF HUGO, OKLAHOMA, an
Oklahoma Municipality, and HUGO
MUNICIPAL AUTHORITY, an
Oklahoma Public Water Trust for the
benefit of the City of Hugo, Oklahoma

       Plaintiffs,

CITY OF IRVING, TEXAS,

       Intervenor-Plaintiff,

      v.                                      Case No. CIV-08-303-JTM

JESS MARK NICHOLS, RUDOLF
JOHN HERRMANN, ED FITE, FORD
DRUMMOND, JACK W. KEELEY,
KENNETH K. KNOWLES, LINDA LAMBERT,
LONNIE FARMER, and RICHARD SEVENOAKS,
in their official capacities as members of the Oklahoma Water
Resources Board and the Oklahoma Water
Conservation Storage Commission,

       Defendants.

MEMORANDUM AND ORDER

This matter is before the court on the parties' cross-motions for summary judgment. (Dkt. Nos. 50, 97 & 111). The plaintiffs in this case are the City of Hugo, Oklahoma; the Hugo Municipal Authority; and the City of Irving, Texas. The nine individual defendants are the members of the Oklahoma Water Resources Board ("Board"), and the Oklahoma Water Conservation Storage Commission ("Commission"). The plaintiffs note in their supplemental joint motion for summary judgment that they "hereby supplement their previously filed motion Dkt. #50." (Dkt. No. 97 at 1).

The plaintiffs are seeking: 1) a declaratory judgment that certain Oklahoma laws discriminate against the sale of water in interstate commerce in violation of the Commerce Clause of the United States Constitution; and 2) a permanent injunction forbidding the defendants from prospectively enforcing those laws. (Dkt. No. 97 at 25).

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56 (c), the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The City of Hugo, Oklahoma, is an Oklahoma municipality located in Choctaw County, Oklahoma. Hugo Municipal Authority is an Oklahoma public water trust formed for the benefit of the City of Hugo, Oklahoma. The City of Irving, Texas is a Texas municipality located in Dallas County, Texas. The Board and the Commission are the state agencies responsible for enforcing the laws enacted by Oklahoma regarding the appropriation, and use of the surface waters of the state.

In 1954, the Board issued the City of Hugo a stream water permit allowing it to appropriate 1,700 acre-feet of stream water per year from the Kiamichi River. In 1972, the Board issued a permit to the Hugo Municipal Authority authorizing the appropriation of an additional 28,800 acre-feet of stream water per year from the Kiamichi River. In July 2005, the City of Hugo transferred its 1954 stream water permit rights to the Hugo Municipal Authority, which the Board approved in August 2005.

In 2002, the Hugo Municipal Authority filed a stream water application with the Board requesting appropriation of an additional 200,000 acre-feet of stream water annually from the Kiamichi River. At about the same time, the Oklahoma Legislature instituted a moratorium on the "sale or exportation of surface water and/or groundwater outside this state," subject to the provisions of the rest of the section. Okla. State. tit. 82, § 1B(A); Okla. Stat. tit. 74, §1221.A. The moratorium was effective June 6, 2002, following Hugo Municipal Authority's filing of its 2002 application, stating that "no state agency, board, commission, committee, department, trust or other

instrumentality of this state or political subdivision thereof . . . shall contract for the sale or exportation of surface water or groundwater outside the state without the consent of the Oklahoma Legislature specifically authorizing such sale or export of water." Okla. Stat. tit. 82, §1B(B).

On May 12, 1978, the authorized representative of the States of Arkansas, Louisiana, Oklahoma, and Texas approved the Red River Compact ("the Compact"). They had received Congressional consent to negotiate and enter into such an agreement. On December 22, 1980, the President signed Public Law No. 96-564, in which Congress gave its consent to the Compact. The Compact divides the Red River and its tributaries into reaches and subbasins for purposes of apportionment of water and administration of the Compact.

On August 7, 2008, the City of Hugo and the City of Irving entered into a contract whereby Hugo would sell, and Irving would purchase substantial quantities of Oklahoma stream water. The Kiamichi River is the source of the stream water. In November 2008, Hugo Municipal Authority filed petitions to change the place of use for the 1954 and 1972 permits. The petitions requested amendments authorizing out-of-state municipal use as the principal use of the appropriated water. On March 25, 2009, the Board requested additional information, including the water needs of the intended added place of use, Irving, Texas.

The moratorium on out-of-state water sales has now expired according to its terms. *See* 82 Okla. Stat. § 1B (moratorium expired five years from effective date of the act, i.e. November 1, 2009).

In addition to the moratorium, the Oklahoma Legislature has enacted other legislation regulating the sale or use of Oklahoma water for out-of-state interests. *See* Okla. Stat. tit. 82, § 105.16(B) (providing that surface water must be put to use within seven years unless the Board

determines that an extension is in the interest of beneficial water use in Oklahoma); Okla. Stat. tit. 82, § 1085.2(2) (prohibiting the Board from making a contract to convey title or use of water outside of Oklahoma without authorization by the Oklahoma Legislature).

The Board provided water supply and usage data that indicated almost fourteen times as much stream water flows out of the state during a given year than is actually allocated for use in the state. The specific segment of the Kiamichi River that is the source of the stream water that Hugo intends to sell to Irving is only 2.4% of the adjusted total stream water available.

All of the permits at issue in this case have a point of diversion upstream of the Hugo Dam at the Hugo Reservoir. Hugo Reservoir is within Reach II, Subbasin 1. The Compact provided that Oklahoma is apportioned the water of Subbasin 1 of Reach II, and shall have unrestricted use thereof.

In support of their cross-motion for summary judgment, the defendants allege:

1. The doctrine of primary jurisdiction requires this court to allow the Red River Compact Commission to interpret the red river compact it administers before imposing a federal judicial ruling on the red river compact.

2. HB 1483 repealed by implication the Oklahoma moratorium challenged by plaintiffs. The new provision constitutionally retains water compacted to Oklahoma within Oklahoma unless and until the Oklahoma Legislature determines to the contrary.

3. The dormant commerce clause, as interpreted in *Sporhase*, has no application when Congress has expressly authorized constraints on interstate commerce through an interstate surface water compact.

4. The apportionment of water by the federal Red River Compact authorize the restrictions on out-of-state transport of water to which plaintiffs object. Plaintiffs have offered no valid basis for challenging that apportionment.

5

**PRELIMINARY NOTE**

At the outset, the court notes that several issues it will address in this case were recently reviewed by Judge Heaton in *Tarrant Regional Water District v. Hermann*, No. CIV-07-0045-HE, 2009 WL 3922803 (W.D. Okla. Nov. 18, 2009). Judge Heaton's excellent and exhaustive opinion provides a detailed outline for the court to utilize in its order.

**DOCTRINE OF PRIMARY JURISDICTION**

Defendants maintain the court should dismiss this case based on the doctrine of "primary jurisdiction." They argue that some or all of the issues raised as to the Compact by plaintiffs' claims can and should be presented first to the Red River Compact Commission ("the Compact Commission"), a body formed under the Compact, as its determination may either resolve the current controversy or at least better inform the court's further decisions as to matters involving the Compact interpretation. Defendants have posed questions to the Compact Commission, which the defendants allege grow out of the issues in this case. Plaintiffs maintain that the doctrine of "primary jurisdiction" does not apply, and deferral to the Compact Commission is not appropriate in the present circumstances.

"The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Williams Pipe Line Co. v. Empire Gas Corp.,* 76 F.3d 1491, 1496 (10th Cir.1996) (quoting *National Communications Ass'n, Inc. v. American Tel. and Tel. Co.,* 46 F.3d 220, 223 (2d Cir.1995)). In determining the doctrine's application, courts evaluate both the need to promote consistent application of the regulatory scheme involved and the interest in court reliance on agency expertise

in resolving "issues of fact not within the conventional experience of judges." *Far East Conference v. United States,* 342 U.S. 570, 574 (1952).

While plaintiffs' claims involve issues of Compact interpretation, there is no direct assertion of rights under the Compact. The claims before the court are issues of statutory construction, and matters of law. There are no undisputed material facts, therefore the court finds it is unnecessary to seek the Compact Commission's expertise in resolving "issues of fact not within the conventional experience of judges." *See S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 750-51 (10th Cir. 2005). The court finds dismissal based on the doctrine of primary jurisdiction is not appropriate.

**REPEALED BY IMPLICATION**

Defendants next argue this case is moot, asserting that H..B. 1483 (paragraph G to Okla. Stat. tit. 82, § 105.12) impliedly repealed all provisions of Oklahoma law which potentially affect plaintiffs' applications, citing:

> Notwithstanding the provisions of any other law that may be deemed inconsistent with this section, the Board shall promulgate rules and apply the provisions of Section 1 of this act and subsections A, B, D, E, and F of this section to applications for use of water for which no final adjudication has been made by the Oklahoma Water Resources Board before the effective date of this act.

As Judge Heaton noted in *Tarrant*:

> [R]epeals by implication are not favored. *Nat'l Ass'n. of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 662 (2007). It is presumed the legislature did not intend, by enacting a new statute, to repeal an existing statute by implication. *Strong v. Lauback,* 89 P.3d 1066, 1070 (Okla.2004). A clear, unequivocal and irreconcilable conflict between the prior and new statutes must exist to warrant a conclusion that the prior statute was impliedly repealed. *City of Sand Springs v. Okla. Dep't of Welfare,* 608 P.2d 1139, 1151 (Okla.1980).

7

*Tarrant* at *2.

Neither party alleges that H.B. 1483 contains an explicit repealer. Some of H.B. 1483's provisions are inconsistent with various provisions of prior Oklahoma law while other provisions are consistent. Therefore, H.B. 1483 as a whole is not in irreconcilable conflict with prior Oklahoma law to the extent that the prior statutes are impliedly repealed. *See id.* at 1151.

The parties do not dispute that H.B. 1483 requires the Oklahoma legislature's approval of any permit for out-of-state, but not in-state, use of water apportioned to Oklahoma under an interstate compact that. *See* Okla. Stat. tit. 82, § 105.12A(D). The issue before this court is identical to the one addressed in *Tarrant:* whether a requirement of legislative approval of an interstate water transfer, when in-state transfers are not similarly conditioned, implicates Commerce Clause concerns. *Tarrant* at *2.

Since H.B. 1483 did not explicitly nor implicitly repeal the provisions that plaintiffs are contesting, the court finds the passage of H.B. 1483 did not render this controversy moot. Thus, the court is must address the substantive claims.

## "DORMANT" COMMERCE CLAUSE CLAIM

There is no dispute among the parties that: 1) water is an "article of commerce" to which the Commerce Clause is applicable; 2) Congress has the power to regulate commerce in water and, where it does so, Congress' determination controls and 3) the "dormant" Commerce Clause is applicable only where Congress' power to regulate in fact lays dormant. Defendants maintain the Compact precludes the plaintiffs' Commerce Clause claims. The issue is whether Congress regulated the Kiamichi River with the Compact.

8

Once Congress authorizes state actions, they are invulnerable to constitutional attack under the Commerce Clause. *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 653-654 (1981); *White v. Massachusetts Council of Construction Employers, Inc.,* 460 U.S. 204 (1983). In *Tarrant*, the court correctly noted that once Congress approves an interstate compact, the compact is more than an agreement between the involved states, it becomes a federal statute. *Tarrant at *4* (citing *Texas v. New Mexico*, 482 U.S. 124, 128 (1987)).

The issue is whether Congress' intent is sufficiently clear. Defendants allege that Congress authorized the kinds of limitations Oklahoma placed on the interstate sale or transfer of water, when it ratified the Compact. The plaintiffs take a contrary position.

There is guidance to determine whether Congress has authorized the state regulatory scheme. The Supreme Court has found a range of specificity sufficient to determine congressional intent. *See Sporhase v. Nebraska,* 458 U.S. 941, 960 (1982); *New England Power Co. v. New Hampshire*, 455 U.S. at 343; *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 427 (1946) (in the instances in which Congress' consent is found for otherwise impermissible burdens on commerce, Congress' intent and policy to sustain state legislation from attack under the Commerce Clause was expressly stated); *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984) ("[t]here is no talismanic significance to the phrase 'expressly stated,' however; it merely states one way of meeting the requirement that for a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be unmistakably clear").

Congress ratified the Compact, but the parties disagree as to its scope and its relationship to the challenged Oklahoma regulatory scheme. Just as in *Tarrant*, the court is yet to find a case

directly addressing the question of whether Congress' approval of compact language such as that involved here is "sufficient to insulate state statutes from Commerce Clause scrutiny." 2009 WL 3922803 at *4. As in *Tarrant*, the plaintiffs rely on *Sporhase,* asserting that it is the Supreme Court case which dealt most closely with issues analogous to those involved here.

While this court finds that some *Sporhase* language provides support for the plaintiffs' position, the facts distinguish the two cases. *Sporhase* involved a Commerce Clause challenge to a Nebraska statute which limited the exportation of ground water to certain neighboring states. Nebraska argued that Congress' intent to defer to state laws regulating ground water was incorporated in a variety of federal statutes and two interstate water compacts. The Supreme Court rejected that argument, concluding the compact and statutory language did not evidence an intent to remove constitutional constraints on the pertinent state laws. *Sporhase* at 959. The Supreme Court concluded: "Neither the fact that Congress has chosen not to create a federal water law to govern water rights involved in federal projects, nor the fact that Congress has been willing to let the States settle their differences over water rights through mutual agreement, constitutes persuasive evidence that Congress consented to the unilateral imposition of unreasonable burdens on commerce." *Id.* at 960.

In *Sporhase*, Nebraska relied on interstate water compacts that addressed surface water, rather than ground water, and were directed at showing some broad federal deferral to state water laws *in general*, as opposed to a *specific intent* to authorize a regulatory scheme. Based on the court's reading of *Sporhase,* the Supreme Court found there was no specific intent by Congress to address the exportation of *ground water* based on the ratification of a compact that only addressed

10

*surface water*. Here, the Compact addressed the water in issue, and it specifically contemplated dividing the water by allocating it among the Compact states.

The defendants also cite *Intake Water Co. v. Yellowstone River Compact Comm'n,* 769 F.2d 568 (9th Cir.1985). The *Intake Water* court rejected a Commerce Clause challenge to an interstate water compact which restricted the diversion of water outside the Yellowstone River Basin unless the signatory states unanimously agreed to the diversion. But those facts are inapposite with the instant facts. The restrictive provision in *Intake Water* which arguably violated the Commerce Clause arose from the state compact – not in the statutes of the relevant states. The Ninth Circuit found that the Commerce Clause was not violated since the challenged provision was federal law, having been approved by Congress. As federal law, it could not be the basis for a dormant Commerce Clause claim. *Intake Water*, 769 F.2d at 569-70. The case is not controlling since here the challenged restrictions are not in the Compact, but are found in Oklahoma statutes.

Given the lack of controlling authority, it is appropriate for this court to look to a variety of factors, including: 1) the nature of an interstate compact; 2) the language Congress used in the Compact it ratified; and 3) the logical import of that language. *See Tarrant*, 2009 WL 3922803 at *5. The Compact does not explicitly prohibit the export of water, and makes no reference to the Commerce Clause. The court does not find that to be detrimental to its analysis based on the fact there is no definitive level of specificity required. *See Sporhase* at 960; *New England Power* at 343; *Prudential Ins. Co.* at 427; *South-Central Timber Dev., Inc.* at 91.

First, the court looks to the language of the Compact. According to Section 1..01(a), the Compact's intent is to "govern[] the use, control and distribution of the interstate water" between

11

the signatories, and so reduce potential legal conflicts. To achieve this aim, the Compact seeks to "provide an equitable apportionment" of the Red River water, and create a basis for state or joint action by "ascertaining and identifying each state's share" of the water. Compact, § 1.01(b) and (e). Each signatory "may use the water allocated to it by this Compact in any manner deemed beneficial by that state." Compact, § 2.01. The Compact expressly provides that a state does not waive or forfeit its rights by failing to use all of the water allocated to it. Compact, § 2.04. The Compact further expressly provides that nothing in it should be construed to "interfere or impair the right or power of any Signatory State to regulate within its boundaries the appropriation, use, and control of water." Compact, § 2.10. Instead, the Compact grants each state "free and unrestricted use" of the water allocated to it. Compact § 4.02(b) (Oklahoma) and 4.03(b) (Texas).

The Commerce Clause serves to thwart state efforts to unfairly advance their own interests at the expense of the larger national economy, efforts which serve to give a state's own citizens "a preferred right of access, over out-of-state consumers, to natural resources located within its borders." *New England Power Co. v. New Hampshire,* 455 U.S. at 338-39. The Compact here explicitly provides for the allocation of resources along a rational and consistent basis among the relevant states; the Compact is openly and unapologetically protectionist. Congress approved the Compact, and it is not subject to any dormant Commerce Clause challenge. That approval "*necessarily* constituted [Congress'] consent to a legal scheme different from that which would otherwise survive Commerce Clause scrutiny." *Tarran*t, 2009 WL 3922803 at *6 (emphasis in *Tarrant*).

This insulating effect extends to the state statutes which have been challenged here as well. The relevant Oklahoma statutes are not inconsistent with the Compact where they address the waters

allocated and apportioned to Oklahoma under the Compact, and that state's right to control waters within its borders is not inconsistent with the Compact. The court's review of all of the evidence and argument fails to indicate the existence of any inconsistency between the relevant Oklahoma statues and the Compact.

Here, Congress approved the Compact, setting standards for the allocation of water resources, via permit or otherwise under the terms of the interstate agreement. That approval of allocation standards successfully protects the Compact from dormant Commerce Clause challenge. Therefore the court finds that the defendants' motion for summary judgment is appropriately based on the plaintiffs' claim that there is a violation of the Commerce Clause. The contested legislative enactments are not in violation of the Commerce Clause based on Congress' ratification of the Compact.

IT IS ACCORDINGLY ORDERED THIS 30th day of April, 2010, that the defendants' cross-motion for summary judgment is granted in part, and denied in part. It is denied insofar as it seeks dismissal of this case on grounds of mootness due to recent legislation or based on any need to defer to the Compact Commission, under the doctrine of primary jurisdiction. It is granted insofar as it seeks summary judgment as to the plaintiffs' Commerce Clause claims. (Dkt. No. 111).

IT IS FURTHER ORDERED that the plaintiffs' motion for summary judgment (Dkt. No. 50) and supplemental motion for summary judgment (Dkt. No. 97) are denied.

IT IS FURTHER ORDERED the following motions be denied as moot: 1) Dkt. No. 91 - plaintiffs' joint motion for preliminary injunction filed on September 4, 2009; and 2) Dkt. No. 92 - defendants' motion to vacate order filed on September 8, 2009.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE